Sophal K. **LUY**

v.

**BALTIMORE POLICE DEPARTMENT,**
et al.

No. CIV. CCB–03–2833.

United States District Court,
D. Maryland.

July 16, 2004.

Sophal Luy, Baltimore, MD, pro se.

Kim Yvette Johnson, Laurel, MD, Neal M. Janey, Sr., The Janey Law Firm PC, Baltimore, MD, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

Now pending before the court is a motion to dismiss filed by defendants Commissioner Kevin Clark and the Baltimore Police Department.[1] The issues in this motion have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the defendants' motion to dismiss will be granted.

## BACKGROUND

Plaintiff Sophal Luy ("Luy"), who is representing himself, was employed by the

---

1. The third defendant, Lieutenant Barbara Magness, has not filed a motion.

Baltimore Police Department ("BPD") as a probationary police officer from August 23, 2001 to June 20, 2002, when he was terminated.[2] Luy alleges that he never was informed of the reasons for his termination, but that it was based on false charges against him of work-related misconduct. (Compl. at ¶ 6.) According to Luy's complaint, he was accused of racism and making racist comments, cowardice in responding to a call regarding a disorderly citizen, blatant disregard for police policy, and leadership problems for his questioning of police procedures. (*Id.* at ¶ 8–13.) Luy states that some of these charges were recited in official BPD documents and at a proceeding before the Maryland Department of Labor, Licensing and Regulation ("DLLR") related to his application for unemployment benefits. (*Id.* at ¶ 6, 9–10.) It is undisputed that in late May and early June 2002, officers of the BPD initiated an investigation into complaints involving Luy, and subsequently recommended that he be terminated.

Luy states that the defendants-the BPD, Commissioner Kevin Clark ("Clark"), and Lieutenant Barbara Magness ("Magness")-failed to give him notice of or an opportunity to respond to these charges. (*Id.* at ¶ 7, 14.) Luy admits in his complaint that, as a probationary police officer, he was not entitled to a hearing before a hearing board prior to his dismissal.[3] (*Id.* at ¶ 14.) Nonetheless, he states that the BPD took advantage of his probationary status to wrongfully terminate his employment. (*Id.*) Luy asserts state law claims for defamation and wrongful termination and federal claims for violations of the Fourteenth Amendment,[4] Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, *et seq.*) ("Title VII"), and 42 U.S.C. § 1981. Defendants BPD and Clark move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Edwards*, 178 F.3d at 244. In addition,

2. Luy is an Asian American who was born in Cambodia.

3. Under Maryland law, the Law Enforcement Officers' Bill of Rights provides various procedural guarantees to officers facing an administrative complaint, including the right to a hearing by a hearing board when dismissal is being recommended. Md.Code Ann., Pub. Safety § 3–101, *et seq.* These protections do not extend to "an officer who is on probationary status on initial entry into the law en-

forcement agency except if an allegation of brutality in the execution of the officer's duties is made." *Id.* § 3–101(e)(2)(iv). The defendants state that Luy was hired for a one-year probationary period, during which he could be terminated at any time if his services were not satisfactory. (Defs.' Mem. at 12.)

4. Because the plaintiff seeks monetary damages, the court interprets this count as arising under 42 U.S.C. § 1983.

because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See. e.g., Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir.2001) (noting that the "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir.1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

▮ The defendants have attached a number of documents to their motion to dismiss, including internal BPD communications relating to Luy's termination and several affidavits from BPD employees. In considering a motion to dismiss under Rule 12(b)(6), the court ordinarily may not consider extrinsic evidence outside of the facts alleged in the plaintiff's complaint and any attachments to the complaint. The court may consider a document submitted by the defendant in support of a motion to dismiss, however, "[if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir.2004); *see also Abadian v. Lee,* 117 F.Supp.2d 481, 485 (D.Md.2000) ("The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action."). Because Luy alleges defamation and does not challenge the authenticity of the documents submitted by the defendants, the court may consider these to the extent that they contain any of the defam-

atory statements relied on in the plaintiff's complaint. The remainder of the documents are not properly before this court and will not be considered.[5]

## I. Title VII and 42 U.S.C. § 1981

▮ Count IV, alleging a violation of Title VII, and count V, alleging a violation of 42 U.S.C. § 1981, must be dismissed as to Clark because he is not a proper defendant. Supervisors are not liable in their individual capacities for violations of Title VII. *See Lissau v. S. Food Service, Inc.,* 159 F.3d 177, 180–81 (4th Cir.1998); *Arbabi v. Fred Meyers, Inc.,* 205 F.Supp.2d 462, 464 (D.Md.2002). Individual supervisors also cannot be liable under § 1981 unless "they 'intentionally cause [an employer] to infringe the rights secured by' section 1981." *Carson v. Giant Food, Inc.,* 187 F.Supp.2d 462, 483 (D.Md.2002) (quoting *Tillman v. Wheaton–Haven Recreation Ass'n,* 517 F.2d 1141, 1145 (4th Cir.1975)). Luy's complaint is devoid of any allegations naming Clark, and thus fails to state any basis for imposing individual liability on him under § 1981.

▮ In any event, Luy has failed to state a claim under Title VII or § 1981 against any of the defendants. As a general matter, the elements of a prima facie claim for discrimination under either of these statutes require the plaintiff to demonstrate that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. *Frank v. England,* 313 F.Supp.2d 532, 538 (D.Md. 2004); *Carson,* 187 F.Supp.2d at 484.[6] Al-

---

5. Neither party has requested that the court convert the motion to dismiss to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b).

6. In a discriminatory termination case, the final two elements may be altered to require a plaintiff to demonstrate that "he was performing at a level that met his employer's le-

though a plaintiff is not required to plead a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), he nonetheless must plead facts sufficient to state each element of the asserted claim. *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003). Among the elements that Luy must allege to state his claim under Title VII or § 1981 is that he was terminated or otherwise treated less favorably "because of" his race. *See* 42 U.S.C. § 2000e–2(a).

■■■■■ Luy's complaint alleges in conclusory fashion that the defendants "willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of race." (Compl. at ¶ 24.) He states that he "was denied promotion, promotional opportunities, and equal treatment and subjected to harassment and disparate treatment because of his race." (*Id.* at ¶ 29.) Beyond asserting his own membership in a protected group as an Asian American, Luy does not allege any specific facts in support of these claims. The complaint provides no factual basis for concluding that Luy was treated differently from similarly situated employees outside of his protected class, or that he was intentionally discriminated against on the basis of his race. Although the court must "accept the well-pled allegations of the complaint as true" *Ibarra*, 120 F.3d at 474, the court

need not accept "legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Baltimore–Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 698 (D.Md.2003) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) and *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979)). Luy's conclusory allegations of race discrimination, devoid of any reference to actual events during his employment, are not sufficient to state a claim under Title VII or § 1981 for race discrimination.[7]

## II. Fourteenth Amendment Due Process

■■■■■ Luy alleges under count I that his termination, without notice of the charges against him or an opportunity to respond to those charges at a name-clearing hearing, violated his due process rights under the Fourteenth Amendment. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). An employee of a state or local government has a protected property interest in continued public employment only if he can show a "legitimate claim of entitlement" to his job under state or local law. *Id.* at 577–78, 92 S.Ct. 2701. A public employee in an at-will position cannot establish such an enti-

gitimate expectations" at the time of his termination, and "the position was filled by a similarly qualified applicant outside the protected class." *Frank*, 313 F.Supp.2d at 538. The elements of a prima face case for discrimination are the same under Title VII and § 1981. *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n. 1 (4th Cir.2004).

7. Luy does allege that he complained to a superior officer about another officer's racist comments (Compl. at ¶ 12), which arguably could support a claim for retaliation under

Title VII or § 1981. *See Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir.2004); *Schamann v. O'Keefe*, 314 F.Supp.2d 515, 528 (D.Md. 2004). He does not allege retaliation in his complaint, however, and does not refer to this theory in his response to the defendants' motion to dismiss. In any event, Luy does not allege any facts that would support the third required element of such a claim, "a causal link" between the complaint and his termination. *Mackey*, 360 F.3d at 469.

tlement, and thus cannot claim any Fourteenth Amendment due process protection. *See Pittman v. Wilson County,* 839 F.2d 225, 229 (4th Cir.1988); *Rogosin v. Mayor, City Council of Baltimore,* 197 F.Supp.2d 345, 353 (D.Md.2002); *Elliott v. Kupferman,* 58 Md.App. 510, 473 A.2d 960, 966 (1984). As a general rule, state and local employees are considered at-will under Maryland law. *See Demesme v. Montgomery County Gov't,* 63 F.Supp.2d 678, 682 (D.Md.1999); *Bowers v. Town of Smithsburg, Md.,* 990 F.Supp. 396, 398 (D.Md.1997). Even assuming that police officers generally are not at-will employees under Maryland law, Luy would not be able to claim this status because he admittedly was a probationary, at-will employee at the time of his termination. *Cf. Lewis v. Bd. of Educ.,* 262 F.Supp.2d 608, 615 (D.Md.2003).[8] Luy cannot state a claim for deprivation of a protected property interest in violation of his due process rights under the Fourteenth Amendment.

■■■■ A state employee's termination also may implicate his liberty interest under the Fourteenth Amendment, if his "good name, reputation, honor, or integrity is at stake." *Roth,* 408 U.S. at 573, 92 S.Ct. 2701. The state employee then has a due process right to be heard and clear his name at a hearing. *Id.* at 573 n. 12, 92 S.Ct. 2701; *see also Beckham v. Harris,* 756 F.2d 1032, 1038 (4th Cir.1985). To state a claim for deprivation of a protected liberty interest, the plaintiff must:

> allege facts tending to show that his superiors made charges against him that might seriously damage his standing and associations in his community or otherwise imposed on him .a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities; that those charges were made public by his employer; and that the charges were false.

*Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 n. 5 (4th Cir.1988); *see also Rogosin,* 197 F.Supp.2d at 353–54; *Carroll v. Town of Univ. Park,* 12 F.Supp.2d 475, 482 (D.Md.1997). As this statement suggests, the due process right does not arise by harm to reputation alone. *See Zepp v. Rehrmann,* 79 F.3d 381, 388 (4th Cir. 1996). Charges made by a plaintiff's state employer "must at least imply the existence of serious character defects such as dishonesty or immorality" in order to implicate a protected liberty interest under the Fourteenth Amendment. *Id.* (internal quotation marks omitted). Statements by a public employer suggesting "incompetence or unsatisfactory job performance" by a terminated employee are not sufficient. *Id.; see also Robertson v. Rogers,* 679 F.2d 1090, 1092 (4th Cir.1982).

■■■ Luy fails to state a claim for deprivation of a protected liberty interest under the Fourteenth Amendment for several reasons. First, the majority of the charges allegedly made by the defendants relate to Luy's job performance and do not imply serious character defects such as dishonesty or immorality, and thus are not sufficient to support a due process depriva-

---

**8.** While the Maryland Court of Special Appeals had held that police officers do not have a protected property interest in continued employment under Maryland law, *see Elliott,* 473 A.2d at 966, the Court of Appeals has assumed otherwise in several more recent opinions. *See Coleman v. Anne Arundel County Police Dep't,* 369 Md. 108, 797 A.2d 770, 793 (2002); *Reed v. Mayor and City Council of* Baltimore, 323 Md. 175, 592 A.2d 173, 177 (1991). *Cf. Carroll v. City of Westminster,* 52 F.Supp.2d 546, 562 (D.Md.1999) (concluding that a police officer did not have a protected property interest in continued employment under Maryland law, relying on *Elliott*); *Bowers,* 990 F.Supp. at 398 (same). I do not need to resolve this question.

tion.[9] Second, Luy does not allege that these statements were "made public by his employer," except through internal communications to BPD employees and in submissions to the DLLR pursuant to Luy's request for unemployment benefits, and these disclosures are not sufficient.

Charges that are made in internal communications with the employer are not thereby "made public." *See. e.g., Jackson v. Long*, 102 F.3d 722, 725, 730 (4th Cir.1996) (suggesting that press release and public statement, but not internal investigation, made charges public); *Stone*, 855 F.2d at 169–70, 173 n. 5 (stating that it was not clear if charges had been "made public" by the employer, although there had been internal investigation and reports); *Bunting v. City of Columbia*, 639 F.2d 1090, 1092, 1094 (4th Cir.1981) (suggesting that comments to newspaper, but not internal written reports, made charges public). Charges recorded in an employee's personnel file are considered public "when that file may be the subject of inspection by prospective employers." *Ledford v. Delancey*, 612 F.2d 883, 886–87 (4th Cir.1980); *see also Brandt v. Bd. of Coop. Educ. Services*, 820 F.2d 41, 44–45 (2d Cir.1987) (finding that charges in personnel file are made public if they are likely to be disclosed to future employers); *but see Carroll*, 12 F.Supp.2d at 482–83 (information disclosed to prospective employers at employee's request was not made public by employer).

A state employer also should not be held liable for disclosing information to another state agency at the former employee's request at some time after the employee's termination-in this case in order for Luy to secure unemployment bene-

fits. *See Hannon v. Turnage*, 892 F.2d 653, 660 (7th Cir.1990) (finding that disclosure made by employer to another government agency, initiated by the employee's request, was not sufficient); *Gentile v. Wallen*, 562 F.2d 193, 197–98 (2d Cir.1977) (finding that disclosure regarding unemployment benefits was not sufficient, because it occurred after termination and was a confidential communication to an authorized state agency); *Harrison v. Bd. of County Comm'rs*, 775 F.Supp. 365, 367 (D.Colo.1991) (same, because intragovernmental dissemination of information is not sufficient and there was no showing that statements at unemployment hearing went beyond that privileged setting); *cf. Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (stating that employer does not make charges public by disclosing them in subsequent litigation, noting that a contrary rule "would penalize forthright and truthful communication...between litigants"). This is consistent with other decisions holding that the alleged public disclosure by a public employer must occur in conjunction with the employee's termination and must be voluntary. *See, e.g., Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir.2004); *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir.2002).

For the reasons stated, Luy cannot state a claim for deprivation of a protected liberty interest in violation of his due process rights under the Fourteenth Amendment.

## III. Wrongful Discharge

In count III, Luy alleges that the defendants wrongfully terminated him in violation of public policy, by fabricating charges against him and not providing him with an opportunity to be heard. Under

---

**9.** The one possible exception is the allegation that Luy is racist and made racist remarks. *See Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845 (8th Cir.2002). Even assuming these remarks implicate Luy's liberty interest under the Fourteenth Amendment, he fails to state a claim for the other reasons stated.

Maryland law, employment is generally at-will and thus subject to termination "at the pleasure of either party at any time." *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 823 A.2d 590, 602 (2003). Maryland law recognizes an exception allowing an employee to bring a tort action for abusive or wrongful discharge when the termination "violates some clear mandate of public policy." *Id.* (internal quotation marks omitted); *see also Terry v. Legato Sys., Inc.*, 241 F.Supp.2d 566, 569 (D.Md. 2003). To state a claim for wrongful discharge under Maryland law, a plaintiff must "specifically identify" the public policy which he alleges was violated. *Terry*, 241 F.Supp.2d at 569 (quoting *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 151 (4th Cir.2002)). Moreover, "[i]f the relevant public policy is contained in a statute, and the statute provides a remedy, the tort of wrongful discharge is not available." *Id.* at 571; *see also Porterfield*, 823 A.2d at 603; *Molesworth v. Brandon*, 341 Md. 621, 672 A.2d 608, 616 (1996).

 Luy did not specifically identify any public policy in his complaint. (Compl. at ¶ 22.) In response to the defendants' motion to dismiss on this ground, Luy states "the public policy is one of discrimination and Due Process, which he alleges under Title VII, Fourteenth Amendment, and 42 U.S.C. § 1981." (Pl.'s Resp. at 3.) The cited public policies cannot support a claim for wrongful discharge under Maryland law, because existing federal statutes provide civil remedies that can vindicate these interests, as evidenced by the other counts in Luy's complaint. *See* 42 U.S.C. §§ 1981, 1983, 2000e–2(a); *cf. Terry*, 241 F.Supp.2d at 571; *Makovi*

*v. Sherwin–Williams Co.*, 316 Md. 603, 561 A.2d 179, 189 (1989). Accordingly, count III also must be dismissed for failure to state a claim upon which relief can be granted.

## IV. Defamation

Finally, Luy alleges in count II that the defendants knowingly made false and defamatory statements about him in BPD documents and before the DLLR, which resulted in his termination and subsequent inability "to procure a position with any other law enforcement agency." (Compl. at ¶ 17–20.) Luy's claim against BPD for defamation fails for several procedural reasons.[10] First, the applicable one-year statute of limitations bars any claim for statements that were communicated prior to October 2002, as Luy did not file the present complaint until October 2, 2003. *See* Md.Code Ann., Cts. & Jud. Proc. § 5–105; *see also Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470, 665 A.2d 297, 316 n. 9 (1995) (finding that a claim for defamation accrues on the date when statements were communicated). Second, Luy did not provide prior notice of his claim to the Baltimore City Solicitor, as required by Maryland law.

 The Local Government Tort Claims Act ("LGTCA") requires a plaintiff seeking unliquidated damages from a local government or its employees to submit administrative notice of this claim within 180 days after the injury. Md.Code Ann., Cts. & Jud. Proc. § 5–304(a). In Baltimore City, the notice must be made in person or by certified mail to the corporate authorities for the City or the City

---

10. Although the claim for defamation apparently is brought against Clark as well, the complaint fails to identify any statements by Clark or any basis for imposing liability on him for defamation. *See Gohari v. Darvish*, 363 Md. 42, 767 A.2d 321, 327 (2001) (stating that the first element for a claim of defamation is that the defendant made a defamatory statement to a third person). Accordingly, Luy has failed to state a claim for defamation against Clark.

Solicitor. *Id.* § 5–304(b)(1). "The notice shall be in writing and shall state the time, place, and cause of the injury." *Id.* § 5–304(b)(3). "The notice requirements are intended to apprise a local government of its possible liability at a time when it could conduct its own investigation...sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Faulk v. Ewing,* 371 Md. 284, 808 A.2d 1262, 1272 (2002) (internal quotation marks omitted). The filing of this notice is a condition precedent to the plaintiff's underlying action for damages, and should be alleged as a substantive element in the complaint in order to state a claim under Maryland law. *Curtis v. Pracht,* 202 F.Supp.2d 406, 414 (D.Md. 2002); *see also Hargrove v. Mayor and City Council of Baltimore,* 146 Md.App. 457, 807 A.2d 149, 152 (2002). Although the requirement may be met by "substantial compliance," this still "requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Faulk,* 808 A.2d at 1272.

 Luy did not allege in his complaint that he had provided any prior notice of his defamation claim to the City Solicitor or any agent of the City. The defendants raised this argument in their memorandum in support of the motion to dismiss, and in response Luy does not claim that he provided any notice, but instead notes that he has alleged constitutional violations. (Pl.'s Resp. at 3.) This argument would not save his claim for defamation, which is an intentional tort but not of constitutional dimensions. In any event, the notice requirements of the LGTCA apply to intentional and constitutional torts. *Curtis,* 202 F.Supp.2d at 414 (citing *Thomas v. City of Annapolis,* 113 Md.App. 440, 688 A.2d 448, 456 (1997)). Luy does allege that he previously filed "charges of discrimination" with the EEOC (Compl. at ¶ 26), and the defendants note that Luy filed a grievance with the Maryland Commission on Human Relations in October 2002, which the City responded to in July 2003 (Defs.' Mem. at 2). Even assuming these administrative complaints otherwise would meet the requirements for "substantial compliance" with the LGTCA, there is no allegation nor any reason to believe that they would have provided any notice of Luy's claim for defamation.[11] While the LGTCA notice requirement may be excused "upon motion and for good cause shown," Md.Code Ann., Cts. & Jud. Proc. § 5–304(c), Luy has not made such a request nor alleged any facts that would establish good cause. Because Luy has not alleged compliance with the notice requirement of the LGTCA, he has failed to state a claim for defamation against the BPD under Maryland law.

## V.

For the reasons stated, Luy has failed to state a claim upon which relief can be granted against either the BPD or Clark. The court notes that although Magness did not join in the pending motion to dismiss, the same arguments would preclude all of the claims asserted against her. Accordingly, if Luy does not show good cause to the contrary by July 28, 2004, the com-

---

**11.** The Maryland Commission on Human Relations is authorized to receive complaints alleging employment discrimination based on race, sex, color, national origin, age, religion, marital status, sexual orientation, genetic information, or disability. *See* Md.Code Ann., Art. 49B §§ 9A, 16. The EEOC is authorized to receive complaints alleging employment discrimination based on race, color, religion, sex, national origin, disability, or age, or retaliation for opposition to these unlawful employment practices. *See* 29 U.S.C. § 623(a), 42 U.S.C. §§ 2000e–2(a), 2000e–3(a), 2000e–5(b), 12112(a).

plaint will be dismissed as to Magness also and the case will be closed.

A separate order follows.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. defendants Commissioner Kevin Clark and Baltimore Police Department's motion to dismiss (docket no. 8) is **GRANTED**;

2. the complaint will be **DISMISSED** as to defendant Barbara Magness unless the plaintiff shows good cause to the contrary by July 28, 2004; and

3. copies of this Order and the accompanying Memorandum shall be sent to counsel of record and to the plaintiff.